## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**Mohammed A. Sayed**

     Plaintiff,

v.

**Mountain Meadows Lamb Corporation d/b/a Superior Farms - Denver**

     Defendant.

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff, Mohammed A. Sayed ("Mr. Sayed" or "Plaintiff"), by his undersigned counsel, files this Complaint against Mountain Meadows Lamb Corp. d/b/a Superior Farms – Denver ("Superior Farms" or "Defendant"), alleging as follows:

### PARTIES

1.  At all relevant times to the allegations contained herein, Mr. Sayed was a citizen of the United States of America and resided in the state of Colorado.

2.  Mountain Meadows Lamb Corporation is a Colorado corporation with its principal place of business at 4900 Clarkson St., Denver, CO 80216.

3.  On May 12, 2011, Mountain Meadows Lamb Corporation registered a trade name with the Colorado Secretary of State as Superior Farms – Denver.

### JURISDICTION AND VENUE

4.  This court has original jurisdiction of the subject matter of the allegations contained in the complaint pursuant to 28 U.S.C. §§ 1331, 1332, and 42 U.S.C. § 2000e-5(f).

5.     The acts complained of herein were committed or had their principal effect within the District of Colorado, and therefore, venue for this civil action is proper pursuant to 28 U.S.C. § 1391(b).

## ADMINISTRATIVE PROCEDURES

6.     On July 1, 2019, Mr. Sayed filed a Charge of Discrimination, Charge No. 541-2019-02600, with the U.S. Equal Opportunity Commission ("EEOC"), alleging employment discrimination.

7.     On September 27, 2021, Mr. Sayed received his Notice of Right to Sue, from the EEOC dated September 27, 2021.

8.     Mr. Sayed filed this civil action within ninety (90) days of receipt of September 27, 2021.

9.     Mr. Sayed has exhausted all administrative remedies and this action is timely filed.

## GENERAL ALLEGATIONS

10.    Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

11.    Mr. Sayed is an Egyptian male, born on the African continent.

12.    Mr. Sayed has black skin color.

13.    Mr. Sayed's native and primary language is Arabic.

14.    Mr. Sayed is not fluent in English and is dependent on a translator to effectively communicate with English speaking persons.

15.    Mr. Sayed has difficulty reading and writing English.

16.    Mr. Sayed is Muslim and practices the religion of Islam.

17.    Mr. Sayed began his employment at Superior Farms on December 15, 2014.

18.     Plaintiff was issued W-2's for the years 2014 through 2019 by Mountain Meadows Lamb Corporation, designated as the employer.

19.     In September 2018, Mr. Sayed was named by Defendant as employee of the month.

20.     Mr. Sayed was also promoted to a "gold hat," designating him as a mentor for other employees and he would train other employees.

**Producing Halal Products**

21.     Superior Farms operates a lamb processing plant in Colorado.

22.     Mr. Sayed was hired as a butcher and a Halal bleeder.

23.     A Halal bleeder is a butcher, certified to perform an Islamic ceremony required to produce Halal-labeled meat.

24.     In the Islamic religion the consumption of meat is impermissible unless prepared according to the Halal process.

25.     The Halal process is an Islamic religious practice in accordance with the teachings on the Quran.

26.     Halal-labeled meat can be consumed by Muslim consumers, consistent with their religious standards.

27.     For meat to be certified Halal, the animal must be slaughtered according to Islamic religious requirements.

28.     For meat to be certified as Halal, the animal must be slaughtered by a Muslim who is facing East.

29.     For meat to be certified as Halal, the animal must by slaughtered by a sharp knife so its blood leaves the meat while prayers in the name of Allah are stated.

30.     The slaughtering of the animal is a religious ceremony and part of the practice of Islam.

31.     If these requirements are not met, the meat is not Halal.

32.     Superior Farms is a certified Halal slaughtering plant.

33.     To be certified Halal slaughtering plant, Superior Farms is required to comply with the Islamic Rites of the Halal procedures to produce products that are suitable for consumption by all Muslims.

34.     Meat harvested from an animal that is not slaughtered according to the mandates of Islam then is Haram, or forbidden to be consumed by a Muslim.

35.     During his employment with Superior Farms, Mr. Sayed worked in the Harvest Department and was one of three employees qualified to engage in the practice of Islam to slaughter animals according to Islamic law so that the meat could be labeled and certified Halal.

36.     There were forty-two employees in the Harvest Department, the three Muslim employees were Mr. Sayed, Ahmad al Bilbesi and Amadedin "Imad" Eganwa.

37.     Mr. Sayed ensured that Superior Farms' practices complied with Halal so the meat could be certified and sold as Halal.

38.     For the majority of Mr. Sayed's employment, Superior Farms was following the correct religiously mandated procedures to certify their meat as Halal.

39.     When meat was being properly slaughtered in accordance with Halal, Mr. Sayed would sign the paperwork that certified the meat as Halal.

40.     Upon such certification, the meat can then be packaged with a label known as a "Product Halal Certificate" certifying it is genuine meat allowed to be consumed by Muslims.

41.     The United States Department of Agriculture had personnel on site at Defendant's plant to assure its compliance to laws and regulations, including accurate advertisement of its products, and Halal certification.

**Mr. Sayed's Treatment by Defendant and its Employees**

42.     Mr. Sayed was one of only a few other Muslim employees in Superior Farms operation facilities.

43.     The majority of the employees were not Muslim.

44.     The majority of the employees were Hispanic in Superior Farms operation facilities.

45.     During Mr. Sayed's employment with Superior Farms he and the other Muslim employees were called "Arab Negros" by the other employees.

46.     The employees who called the Muslim employees "Arab Negros" would laugh and point after saying the phrase.

47.     Africans, non-Muslim and non-Egyptians, were allowed to take long breaks and receive pay when not working, while Plaintiff and similarly situated Muslim and black persons were denied these conditions, benefits, and privileges.

48.     Employees would call Mr. Sayed and the other black and Muslim employees "Arab Negros" in front of supervisors and over the plant's sound system.

49.     Black Muslim and Hispanic employees engaged in fighting and physical confrontations because the Muslims were permitted to be called Arab Negros and be harassed by the Hispanic workers.

50.     Supervisors took no action to stop other employees from harassing and calling the Black Muslim employees "Arab Negros."

51.     In Egypt, a reference to "Arab Negros" refers to the African slave trade dating back to as far as the seventh century.

52.     A reference to "Arab Negros" is a racial slur and an insult to Egyptians.

53.     The other non-Muslim employees created an intimidating atmosphere and would also make comments like "the Arab wants to go to the bathroom," if Mr. Sayed requested a break.

54.     The Hispanic employees would make insulting hand gestures towards the Muslim employees.

55.     Mr. Sayed was frequently prevented from going to the bathroom and taking breaks.

56.     Mr. Sayed and other Muslim employees complained to Angela McGowan ("Ms. McGowan") with human resources about these comments.

57.     Ms. McGowan took no immediate action.

58.     Mr. Sayed and other Muslim employees, Mr. al Bilbesi, and Mr. Eganwa complained to management about being called "Arab Negros" and being treated less favorably than other plant employees.

59.     Mr. al Bilbesi's skin color is black and his national origin is Iraq.  He is Muslim.

60.     Mr. al Bilbesi performed Halal duties while employed at Superior Farms.

61.     Mr. al Bilbesi, like Plaintiff, also complained to Human Resources Manager McGowan that non-Muslims were performing Halal and could not sign the paperwork to certify the meat as Halal.

62.     Mr. Sayed and Mr. al Bilbesi complained to their supervisor, Adrian Fuentes ("Mr. Fuentes") as well as Ms. McGowan of Human Resources, about being called "Arab Negros" by the other employees and the failure to comply with Halal certification.

63.     After Mr. Sayed, Mr. al Bilbesi, and Mr. Eganwa made their complaints, the other didn't use that "Arab Negros" for a short time, then the name calling and discriminatory treatment resumed.

64.    Ms. McGowan threatened Mr. al Bilbesi that if he was not going to sign papers, he would be fired.

65.    Mr. al Bilbesi refused to sign the papers.

66.    Ms. McGowan told Mr. al Bilbesi that it was his last day of work and his employment was terminated.

67.    Mr. al Bilbesi's employment was terminated because he objected to signing the Halal paperwork because of his complaints about harassment and Defendant's failure to follow the religious certification requirements in accordance with his religious beliefs.

68.    Mr. Amadedin "Imad" Eganwa's race is African, his skin color is black, and his national origin is Libya.  He is Muslim.

69.    Mr. Eganwa complained that the Halal practice was not complied with, specifically that non-Muslims were performing Halal slaughtering.

70.    Mr. Eganwa also complained that the animals were killed by electrocution prior to the slaughter.

71.    After his complaints in the Spring of 2019, Mr. Eganwa took approved vacation.  Upon his return, he was accused of not returning to work the previous day, when it was an approved vacation day.  Defendant then terminated his employment.

72.    After a series of complaints, Superior Farms required its workforce to undergo harassment discrimination training in approximately June 2018.

73.    However, the training was ineffective, and the use of "Arab Negros" and humiliating behavior continued against Mr. Sayed and the other Muslims until their employment was terminated.

74.     The other employees also harassed Mr. Sayed for not speaking English fluently in the presence of supervisors.

75.     During his employment with Superior Farms, Mr. Eganwa or Mr. Sayed's spouse would translate for Mr. Sayed.

76.     Superior Farms was aware that Mr. Sayed could not read English.

77.     Superior Farms was aware that Mr. Sayed did not speak English.

78.     Superior Farms was aware that Mr. Sayed understood some English but would require Mr. Eganwa's assistance with translating.

79.     Mr. Sayed's supervisors and Ms. McGowan would take advantage of this language barrier.

80.     When Mr. Sayed worked overtime with Hispanic employees, Mr. Sayed was required to work and not permitted breaks or rest periods.

81.     The Hispanic employees assigned to work overtime would sit in the breakroom and not work.

82.     Management was aware that the Hispanic employees were not working but were being paid overtime.

**Superior Farms did not Allow Muslim Employees to Pray**

83.     As part of his religion, Mr. Sayed is required to pray five (5) times a day.

84.     Early on in his employment with Superior Farms, Mr. Sayed and the other Muslim employees requested breaks throughout the day to be allowed to pray.

85.     The other employees that requested time to pray were Mr. al Bilbesi and Mr. Eganwa.

86.     Mr. Sayed, Mr. al Bilbesi, and Mr. Eganwa are all Muslim's who requested to be able to take breaks to pray as part of their religious beliefs but were denied that practice.

87.    Mr. Sayed requested Friday's off because it was the holy day in Islam and Mr. Sayed wanted to be able to attend Mosque.

88.    Mr. Sayed's request was repeatedly denied by Mr. Fuentes.

89.    One day in September 2018, Mr. Sayed left work early to take his children to a doctor's appointment.

90.    Mr. Sayed's family only had one car and his wife does not drive, requiring that Mr. Sayed take his children to the doctor.

91.    Defendant instructed Mr. Sayed that he was required to request time off two (2) weeks in advance in order to take time off for doctors' visits and similarly situated non-Muslims and Caucasian or Hispanic employees were treated differently.

92.    Plaintiff was not given the same opportunity to request for time to attend Mosque on Fridays.

93.    Mr. Sayed and the other Muslim employees asked Superior Farms if they could alternate taking Fridays off to attend Mosque, but that request was denied.

94.    Superior Farms gave time off for Christian holidays.

95.    In 2018, Mr. Sayed requested time off for a holiday called Eit-al-Fitr, a four-day holiday. Mr. Sayed was only allowed one day off for the holiday, but not Muslim holidays.

96.    In February 2019, Superior Farms hired a Muslim-American male.

97.    Upon information and belief, the Muslim-American male was named Mark.

98.    Mr. Sayed was required to train Mark on proper Halal procedures, which he did.

99.    Mark took breaks during the day to pray and he took Fridays off to attend Mosque, but was terminated shortly after thereafter.

**Superior Farms Stopped Following Halal Procedures**

100.    In February 2019, Superior Farms stopped following the religiously mandated procedures required for Halal certification.

101.    When Superior Farms stopped following correct Halal procedures, Mr. Sayed, Mr. Eganwa, and Mr. al Bilbesi refused to sign the Halal certification paperwork due to their religious beliefs and were terminated from employment.

102.    After he made complaints, on Friday, February 22, 2019, Mr. Sayed refused to sign the paperwork certifying that Superior Farms was following correct Halal procedures because there were numerous failures with the process required for the Halal certification.

103.    Defendant failed to follow the Halal procedures and its own procedures on the Halal process.

104.    Superior Farms was not following the correct method of slaughter instead of using a sharp knife to cut the throat of the animals, Superior Farms was sticking the animals in the chest, killing them in a violation of correct Halal procedures, the Quran, and Mr. Sayed's religion which holds that an animal dead before it is slaughtered is "Maytah" or dead meat and sinful to consume.

105.    Superior Farms also began having non-Muslim employees slaughtering the animals.  One of these employees, Rique Griffin ("Mr. Griffin"), had a tattoo of a prominent symbol from Christianity, a Christian cross visible on his body.

106.    Though having tattoos is considered haram under the Islamic religion, having a tattoo does not itself disqualify a Muslim individual from performing the procedures needed for Halal certification.

107.     Mr. Sayed's objection was not that Mr. Griffin had a tattoo, but rather that Mr. Griffin did not meet the Halal requirements of Islam.  The tattoo was of a cross, a religious symbol from a different religion, and the Quran requires the butcher to be a Muslim or believing in Ahl al Kitab.

108.     Mr. Griffin was questioned by Plaintiff and the other employees including Mr. Eganwa about the Muslim faith. Mr. Griffin could not provide basic answers about the Quran, nor could he state Islamic prayers from memory.

109.     By speaking with Mr. Griffin, Mr. Eganwa learned that Mr. Griffin had little to no knowledge about Islam and the correct prayers needed for the Halal process.

110.     Mr. Sayed was told by another employee, Jeff Molin ("Mr. Molin"), that Mr. Griffin was not Muslim.

111.     Mr. Sayed complained about Mr. Griffin to Superior Farms, but the company continued to allow Mr. Griffin to slaughter animals and certify the meat as Halal.

112.     Superior Farms would also have Abdul Himat ("Mr. Himat") assist in slaughtering animals.

113.     Mr. Himat is not an employee of Superior Farms, but related to a Superior Farms employee.

114.     When Mr. Himat would participate in the slaughtering of animals, he was not the one actually performing the slaughter.

115.     Instead, non-Muslims would actually perform the slaughter while Mr. Himat would merely say the prayers. This was also a violation of Halal certification process and Islamic religion to which Plaintiff and the other Muslims complained based on their faith.

116.     On March 27, 2019, Mr. Sayed informed Superior Farms and the on-site federal employee of the United States Department of Agriculture of his good faith belief that the Halal

process was not being followed and he continued to not sign the paperwork certifying that Superior Farms was labeling the meat as Halal in violation of his religion and Halal certification rules and regulations.

117.    Mr. Sayed told the USDA inspector, Alicia Rhodes ("Ms. Rhodes") and informed Ms. Rhodes of his prior complaints made to Superior Farms that Mr. Griffin was not Muslim.

118.    The USDA inspector Rhodes halted the production line and tagged some harvested meat as non-certified Halal.

119.    Mr. Sayed also called the Halal certifier for Superior Farms, Mr. Izz-al-Din.

120.    Instead of addressing Mr. Sayed's concerns, Mr. Izz-al-Din told Mr. Sayed to just stop talking about non-compliance of the Halal procedures.

121.    Mr. Izz-al-Din told Mr. Sayed that he could get Mr. Sayed a new job anywhere with Superior Farms with a better salary, but that Mr. Sayed had to stop talking about the Halal procedures.

**Superior Farms Retaliates Against Mr. Sayed for Complaints**

122.    Mr. Sayed worked Monday February 18, 2019 through Friday, February 22, 2019, for a total of 40 hours.  His refusal to further sign Halal paperwork was Friday, February 22, 2019.  He was not scheduled to work on Saturday, February 23, 2019.

123.    When Mr. Sayed arrived at work on February 28, 2019, Mr. Fuentes accused Mr. Sayed of not showing up for a shift on February 23, 2019.

124.    Mr. Sayed was not scheduled to work on February 23, 2019.  For months prior, Defendant had approved Mr. Sayed and another employee to work alternating Saturdays.

125.    On February 28, 2019, Mr. Sayed was provided a document to sign that was in English.

126.    Mr. Sayed could not read the document.

127.    Mr. Sayed did not understand the document.

128.    In past matters requiring communications with Mr. Sayed, Superior Farms permitted either Mr. Sayed's spouse or other Muslim employees who spoke Arabic and English to act as an interpreter.

129.    Mr. Sayed was not provided an interpreter.

130.    Mr. Sayed was asked to sign and did sign the document, not knowing what it stated.

131.    Mr. Sayed took a picture of the document with his phone.

132.    The document was a write-up for a "no call, no show" for not coming to work on February 23, 2019, even though Mr. Sayed was not scheduled to work on that day.

133.    Mr. Sayed did not understand what he had signed on February 28, 2019, until he showed the picture of the document to his wife that evening.

134.    Before February 28, 2019, Mr. Sayed had never received any write ups or discipline.

135.    Between February 28, 2019 and March 29, 2019, Mr. Sayed did not sign the Halal certifications.

136.    On March 28, 2019, Superior Farms required Mr. Sayed to speak with Mr. Himat about whether or not Mr. Griffin was Muslim.

137.    Defendant used other employees to threaten and intimidate Mr. Sayed, Mr. al Bilbesi and Mr. Eganwa to falsely sign the Halal certification.  Some of these employees were recently released from prison.

138.    On March 29, 2019, Mr. Sayed got a nosebleed at work and requested to be able to go to the doctor.

139.    Ms. McGowan informed Mr. Sayed that he would only be allowed to go to the doctor if he signed the Halal certification paperwork.

140.     Mr. Sayed refused to sign the paperwork because Superior Farms was still not properly following Halal procedures.

141.     After refusing to sign the Halal certification paperwork, Mr. Sayed was terminated on March 29, 2019.

142.     When Mr. Sayed was terminated, he was presented with a document that was in English by Ms. McGowan and Mr. Fuentes.

143.     He could not read the document.

144.     He did not understand the document and was not provided an interpreter.

145.     Superior Farms knew that Mr. Sayed could not read English.

146.     Superior Farms knew that Mr. Sayed could not understand the document, but required him to sign the document.

147.     The document stated that he was "voluntarily" quitting his employment.

148.     Mr. Sayed's employment was unlawfully terminated on March 29, 2019.

## FIRST CLAIM FOR RELIEF
### (Race, Color and National Origin Discrimination, Discriminatory Discipline and Wrongful Termination in violation of 42 U.S.C. § 2000e-(2)(a))

149.     Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

150.     At all relevant times to the allegations in this complaint, Superior Farms was an employer within the meaning of and covered by 42 U.S.C. § 2000e(b).

151.     At all relevant times to the allegations in this complaint, Mr. Sayed was an employee within the meaning of 42 U.S.C. § 2000e(f).

152.     Mr. Sayed is a Muslim male from Egypt, his skin color is black and a member of a protected class under Title VII.

153.    At all times during his employment, Mr. Sayed was performing at or above the level of

Superior Farms' reasonable expectations.  Mr. Sayed was qualified to perform all forty-two (42)

jobs in the Harvest Department.

154.    Despite Mr. Sayed's qualifications and performance, he was discriminated against

because of his race (African), his national origin (Egyptian), and the color of his skin (black)

when his employment was wrongly disciplined and then terminated.

155.    Superior Farms discriminated against Mr. Sayed in terms and conditions of his

employment and engaged in the pattern and/or practice of discriminatory treatment on the basis

of race, skin color, and national origin in violation of 42 U.S.C. § 2000e-2 with respect to the

privileges, conditions, and benefits of employment, and termination of employment.

156.    Similarly situated employees were treated more favorably than Plaintiff.

157.    Superior Farms is liable for the acts and omissions of its agents and employees.  Superior

Farms either directly or by and through its employees, discriminated against Mr. Sayed when it

terminated Mr. Sayed's employment and denied the benefit of employment on the basis of his

race and national origin.

158.    Superior Farms' acts were intentional and it acted with malice, indifference, and a

reckless disregard of Plaintiff's rights.

159.    The effect of the practices complained of has been to deprive Plaintiff of equal

employment opportunities and otherwise adversely effect his employment status because of his

race, color, and national origin.

160.    As a direct and proximate result of the intentionally discriminatory acts and practices of

Superior Farms, or its agents or employees, Plaintiff has suffered and will continue to suffer

injury, including past and future loss of income and other employment benefits, severe emotional

pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## SECOND CLAIM FOR RELIEF
### (Race Color and National Origin Discrimination, Retaliation in violation of 42 U.S.C. § 2000e-(3))

161.   Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

162.   At all relevant times to the allegations in this complaint, Superior Farms was an employer within the meaning of and covered by 42 U.S.C. § 2000e(b).

163.   At all relevant times to the allegations in this complaint, Mr. Sayed was an employee within the meaning of 42 U.S.C. § 2000e(f).

164.   Mr. Sayed is a Muslim male from Egypt, the color of his skin is black, and a member of a protected class under Title VII.

165.   Mr. Sayed engaged in protected opposition to discrimination when he complained to management at Superior Farms that he was being treated differently because of his race, color, and national origin.

166.   Plaintiff made complaints to management and to the Human Resources offices of Superior Farms based on violations of Title VII.

167.   Superior Farms terminated Mr. Sayed effective on March 29, 2019.

168.   Mr. Sayed was terminated by Superior Farms in retaliation for making complaints to management about racial, national origin, and color discrimination in the workplace in violation of 42 U.S.C § 2000e-3.

169.   Superior Farms committed an unlawful act of retaliation by limiting, segregating or classifying Plaintiff, adversely affecting him, including identifying Plaintiff for termination

because of his complaints raised about his treatment due to his race, skin color, and national

origin.  A reasonable employee would have found the actions Plaintiff challenged materially

adverse.

170.   There exists a causal relationship between Plaintiff's acts in opposition to discrimination

and his non-promotions and his termination.

171.   The effect of the practices complained of has been to deprive Plaintiff of equal

employment opportunities and otherwise adversely effect his employment status because of his

race, color, and national origin.

172.   Superior Farms acted with malice or reckless disregard of Mr. Sayed' federally protected

rights with knowledge it was acting in violation of federally protected rights.

173.   As a direct and proximate result of the intentionally discriminatory acts and practices of

Superior Farms, or its agents or employees, Plaintiff has suffered and will continue to suffer

injury, including past and future loss of income and other employment benefits, severe emotional

pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary

losses.

### THIRD CLAIM FOR RELIEF
**(Race, Color, National Origin, and Religion Hostile Work Environment in Violation of 42 U.S.C § 2000e-2)**

174.   Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation

set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

175.   At all relevant times to the allegations in this complaint, Superior Farms was an employer

within the meaning of and covered by 42 U.S.C. § 2000e(b).

176.   At all relevant times to the allegations in this complaint, Mr. Sayed was an employee

within the meaning of 42 U.S.C. § 2000e(f).

177.   Plaintiff is an Egyptian male with black skin color.

178.   Mr. Sayed was subjected to repeated and severe harassment based on his race, religion, skin color and national origin that altered the terms, privileges, and conditions of Plaintiff's employment, including the termination of his employment.

179.   The conduct that he and others complained of was unwelcome and offensive.

180.   The conduct was directed at Plaintiff and similarly situated persons as he because of his race, national origin, skin color, and religion, Muslim.

181.   Defendant knew or should have known of the conduct and failed to take immediate and effective measures to prevent the conduct from occurring and continuing even after it received Plaintiff's and co-worker's complaints.

182.   Superior Farms acted with malice or reckless indifference to Mr. Sayed's federal protected rights with full and complete knowledge that the behavior was in violation of federal law.

183.   As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## FOURTH CLAIM FOR RELIEF
### (Religious Discrimination, Wrongful Termination and Retaliation in Violation of 42 U.S.C §§ 2000e-2 and 2000e-3)

184.   Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

185.   Mr. Sayed has a bona fide religious belief, Islam, and specifically the holy processing of meat fit for consumption by a Muslim, known as Halal.

186.     Superior Farms was aware of Plaintiff's religious beliefs, and even promulgated written policies and procedures relating to Halal.

187.     Superior Farms instituted employment requirements against Plaintiff and similarly situated Muslims that conflicted with their religious beliefs, including failure to comply with Defendant's Halal certification and its own written policies.

188.     As a result of Defendant's actions, and Plaintiff's complaints thereof, he was subjected to adverse employment action, including termination of his employment, which was casually related to his oppositions of the employment practices.

189.     Defendant engaged in a pattern and practice of unlawful discriminatory employment practices at its facility.

190.     Defendant engaged in unlawful employment practices in violation of 42 U.S.C. §§ 2000e-2(a) and 2000e-3, the effect of which deprived Plaintiff of his equal employment opportunities because of his religion and his seeking religious accommodation.

191.     Superior Farms acted with malice or reckless indifference to Mr. Sayed's federal protected rights with full and complete knowledge that the behavior was in violation of federal law.

192.     As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

### FIFTH CLAIM FOR RELIEF
**(Failure to Accommodate Religion in violation of 42 U.S.C. § 2000e-2(a))**

193.     Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

194.    Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by discriminating against Plaintiff with respect to the terms and conditions of his employment after he requested reasonable accommodations for his religious practice and belief.

195.    Defendant imposed work requirements that conflicted with Plaintiff's bona fide religious beliefs.

196.    Plaintiff notified Defendant of his requests for accommodation.

197.    As a result of Defendant's actions, and Plaintiff's complaints thereof, he was subjected to adverse employment action for failure to comply with the conflicting employment requirements, including termination of his employment, which was casually related to his oppositions of the employment practices.

198.    Superior Farms acted with malice or reckless indifference to Mr. Sayed's federal protected rights with full and complete knowledge that the behavior was in violation of federal law.

199.    As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## SIXTH CLAIM FOR RELIEF
### (Discrimination, Harassment and Retaliation in violation of 42 U.S.C. § 1981)

200.    Mr. Sayed incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

201.    Mr. Sayed is an Egyptian male of Egyptian ancestry with black skin color.

202.    Defendant discriminated against Mr. Sayed in the terms and conditions of his

employment on the basis of his ancestry, his ethnic characteristics and being born Egyptian in

violation of 42 U.S.C. § 1981, including but not limited to the following:

    a.    Illegally treating Mr. Sayed disparately from white employees to make and

    enforce contracts because of his ancestry, ethnic characteristics and/or skin color;

    b.    Declining to offer or permit Mr. Sayed the same employment opportunities,

    benefits, privileges, terms and conditions of the employment contractual relationship as

    white employees because of his ancestry, ethnic characteristics and/or skin color;

    c.    Failing to permit Mr. Sayed to make and enforce contracts by altering his job

    duties and responsibilities employees because of his ancestry, ethnic characteristics

    and/or skin color;

    d.    Permitting persons to modify his contract through harassment and discrimination

    against Mr. Sayed and other Egyptian employees and persons employed in the workplace

    and demonstrating favoritism toward persons not of color employees because of his

    ancestry, ethnic characteristics and/or skin color;

    e.    Failing and refusing to take action to correct the effect of the discriminatory

    policies and practices complained of herein, and/or failing to follow any corrective action

    policies employees because of his ancestry, ethnic characteristics and/or skin color; and

    f.    Terminating Mr. Sayed's employment employees because of his ancestry, ethnic

    characteristics and/or skin color.

203.    Mr. Sayed was subject to severe and pervasive harassment such that it altered the

conditions of his work environment.

204.    The harassment was unwelcome.

205.    The harassment was directed at Mr. Sayed employees because of his ancestry, ethnic characteristics and/or skin color.

206.    Mr. Sayed complained about the harassment he endured but it persisted unabated.

207.    Superior Farms failed to take appropriate remedial or preventative action.

208.    Mr. Sayed suffered tangible employment decisions and acts.

209.    Superior Farms is liable for the discrimination and harassment because it knew or should have known of the harassment and failed to take remedial action.

210.    Superior Farms, either directly or by and through its agents, created a hostile work environment involving harassment, wherein Mr. Sayed suffered the injuries stated herein.

211.    The acts alleged against Superior Farms denied Mr. Sayed the full and equal benefit of the laws as enjoyed by white citizens and Superior Farms engaged in acts impairing Mr. Sayed's rights protected under law.

212.    Superior Farms acted with malice or reckless disregard of Mr. Sayed's federally protected rights with knowledge it was acting in violation of federally protected rights.

213.    As a direct and proximate result of the intentionally discriminatory acts and practices of Superior Farms, or its agents or employees, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

WHEREFORE, Plaintiff Mr. Sayed respectfully requests this court to grant the following relief:

   a)   Award Plaintiff Mr. Sayed all damages to which he is entitled, including, but not limited to back pay, front pay, benefits, and reinstatement pursuant to applicable laws, including without limitation, 42 U.S.C. §§ 2000e-5-6, and 42 U.S.C. §

1981(a);

b)   Award compensatory and punitive damages against Defendants pursuant to applicable statutes, including, without limitation available under 42 U.S.C. § 1981a;

c)   Award attorneys' fees and costs pursuant to applicable statutes, including, without limitation to the fullest extent permitted by law, 42 U.S.C. 2000e-5(k), and 42 U.S.C. §§ 1981, 1981(a) and (b) and 1988;

d)   An award for pre-judgment and post judgment interest to the fullest extent permitted by law; and

e)   Grant Plaintiff Mr. Sayed such other equitable and further relief as to this court appears necessary and proper, including such relief available under 42 U.S.C. § 2000e-5(f) and 42 U.S.C. § 1981a.

### Demand for Jury Trial

Plaintiff, Mohamed A. Sayed, hereby demands a trial by jury.

*s/ Thomas J. Arckey*
Thomas J. Arckey
ARCKEY & ASSOCIATES, LLC
6860 S. Yosemite Court, Suite 2000
Centennial, CO  80111
(303) 798-8546
Email:  tja@arlaw.us
Attorneys for Plaintiff